UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DAVID CRADDOCK,

                    Plaintiff,

        -against-                          <u>MEMORANDUM & ORDER</u>
                                           12-CV-5062(JS)(GRB)
LITTLE FLOWER CHILDREN & FAMILY
SERVICES OF NEW YORK, and
MONROE HALE, as aider and abettor,

                    Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:      Jonathan Bell, Esq.
                    Melissa Jill Beekman, Esq.
                    Joshua Matthew Friedman, Esq.
                    Bell & Kilada, PLLC
                    1 Old Country Road, Suite 347
                    Garden City, NY 11514

For Defendants:     Jeltje DeJong, Esq.
                    Joshua S. Shteierman, Esq.
                    Devitt Spellman Barrett, LLP
                    50 Route 111
                    Smithtown, NY 11788

SEYBERT, District Judge:

        Plaintiff David Craddock ("Plaintiff") commenced this

action against his former employer, defendant Little Flower

Children & Family Services of New York, ("Defendant" or "Little

Flower"), and Little Flower's Assistant Executive Director, Monroe

Hale ("Hale") (collectively "Defendants"), alleging claims of

disability discrimination and retaliation in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et</u> <u>seq.</u>,

and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§ 290 et seq.  Currently pending before the Court is Defendants'

motion for summary judgment.  (Docket Entry 24.)  For the following

reasons, Little Flower's motion is GRANTED.

BACKGROUND

I.   Factual Background[1]

       This  action  arises  out  Plaintiff's  employment  and

subsequent termination as a child care worker for Little Flower.

(Compl. ¶ 10.)  Little Flower claims that Plaintiff was terminated

because of "insubordination on 8/25/11, [his] misrepresentation of

the events that occurred on 8/19/11 and a condition that renders

[him] incapable of providing a safe environment for youth . . . ."

(Termination  Ltr.,  Defs.'  Ex.  Z,  Docket  Entry  24-27,  at  2.)

Plaintiff disputes this, claiming that Little Flower wrongfully

terminated him based on his disability and also in retaliation for

lodging   complaints   regarding   the   alleged   disability

discrimination.   (Pl.'s  56.1  Counterstmt.,  Docket  Entry  25-1,

¶ 44.)

    A.   Little Flower

       Little  Flower  is  a  child  welfare  organization  and

residential treatment facility that provides services to children

with  behavioral  and  mental  health  issues.   (Defs.'  56.1  Stmt.,

---

[1] The following facts are drawn from the parties' Local Civil
Rule 56.1 Statements ("Defs.' 56.1 Stmt." and "Pl.'s 56.1
Counterstmt.") and their evidence in support.  Any factual
disputes will be noted.

Docket Entry 24-28, ¶¶ 3-5.)  Little Flower receives the majority of its students from placements made by various school districts' Committees on Special Education ("CSE's").  (Defs.' 56.1 Stmt. ¶ 3.)  Some of the children recommended to Little Flower have been physically aggressive toward peers or school staff, and many have been hospitalized for self-mutilation issues, suicidal ideations, difficulty forming relationships with peers, and struggles with bipolar disorder.  (Defs.' 56.1 Stmt. ¶ 4.)  Little Flower also provides services for a population of children on the autism spectrum that range from Aspergers to pervasive developmental disability and mild mental retardation.  (Defs.' 56.1 Stmt. ¶ 5.)  Due to the severity of the mental health issues of Little Flower's children, Little Flower maintains a ratio of one child care worker to every five students.  (Defs.' 56.1 Stmt. ¶ 7.)  Plaintiff disputes this, (Pl.'s 56.1 Counterstmt. ¶ 7), and Little Flower admits that despite their best efforts, there are times when there is only one child care worker to supervise a group of five or more children.  (Defs.' 56.1 Stmt. ¶ 8.)

Child care workers at Little Flower are responsible for the supervision of the agency's children and at times transporting them to various places, such as school, shopping, and doctor appointments, both on and off the campus.  (Defs.' 56.1 Stmt. ¶¶ 11-12.)  Plaintiff worked as a child care worker at Little

Flower's Wading River campus until his termination in November 2011.  (Defs.' 56.1 Stmt. ¶¶ 9, 44.))

B.  Plaintiff's Employment History and Termination

Little Flower hired Plaintiff as a child care worker in 2006.  (Defs.' 56.1 Stmt. ¶ 9.)  When Plaintiff was first hired he was assigned to San Juan cottage whose residents were largely medicated and all had behavioral issues.  (Defs.' 56.1 Stmt. ¶ 13.)  About one year later, Plaintiff was reassigned to Claver Cottage where he worked with male residents ages sixteen and older.  (Defs.' 56.1 Stmt. ¶ 14.)  Plaintiff found Claver Cottage to be a more challenging assignment because the residents were older and therefore bigger; thus, any physical interactions with the residents were more difficult to handle.  (Defs.' 56.1 Stmt. ¶ 15.)  Plaintiff was then reassigned to Coretta's Cottage, where the residents had even greater special needs.  (Defs.' 56.1 Stmt. ¶ 16.)  Plaintiff remained at Coretta's Cottage until his termination in 2011.  (Defs.' 56.1 Stmt. ¶ 16.)

During his tenure at Little Flower, residents cursed and spit at Plaintiff on a daily basis at.  (Defs.' 56.1 Stmt. ¶ 17.)  Plaintiff was also physically assaulted on four separate occasions.  (Defs.' 56.1 Stmt. ¶ 18.)  While at Claver Cottage, a resident threw an ottoman at Plaintiff's face grazing his lip; and on another occasion, Plaintiff was pushed by a resident, which caused him to trip over the curb and tear his labrum in his right

shoulder. (Defs.' 56.1 Stmt. ¶¶ 19-20.) On yet another occasion, while restraining a resident, Plaintiff was bitten in the chest. (Defs.' 56.1 Stmt. ¶ 21.) Finally, during a fourth occasion, Plaintiff was pushed by a resident when he attempted to thwart the resident's progress towards Plaintiff's supervisor. (Defs.' 56.1 Stmt. ¶ 22.)

Little Flower child care workers are often injured as a result of altercations with residents. (Defs.' 56.1 Stmt. ¶ 23.) In total, during the years of Plaintiff's employment, there were two-hundred and sixty separate incidents involving Little Flower's residents which resulted in injury to child care workers assigned to the various residential treatments centers. (Defs.' 56.1 Stmt. ¶ 24.)

During his employment at Little Flower, Plaintiff, by his count, had three seizures. (Defs.' 56.1 Stmt. ¶ 25.) Plaintiff "blacks out" when seizing.[2] (Defs.' 56.1 Stmt. ¶ 26.) The first seizure Plaintiff had while working at Little Flower occurred on April 27, 2006, at the front entrance of San Juan Cottage, located on the Little Flower campus. (Defs.' 56.1 Stmt. ¶ 27.) Plaintiff had another seizure on April 30, 2008, while on

---

[2] Plaintiff disputes this statement and contends that he is unable to describe what occurs when he has a seizure and further asserts that because residents were always supervised by a second staff member, at no time was any resident or other staff member injured as a result of his seizures. (Pl.'s 56.1 Counterstmt. ¶ 26.)

duty at Claver Cottage.  (Defs.' 56.1 Stmt. ¶ 28.)  Plaintiff "blacked out" and could not recall the circumstances before or after the seizure.  (Craddock Dep. Tr., Defs.' Ex. F, Docket Entry 24-7, at 64:17-25.)

On September 22, 2008, while operating a motor vehicle on the Little Flower campus, Plaintiff drove into a light post located near Claver Cottage.  (Defs.' 56.1 Stmt. ¶ 29.)  Plaintiff did not remember what caused the accident and did not recall driving into the light post.  (Defs.' 56.1 Stmt. ¶ 29.)  The police were called and an Incident Report was completed by Officer Gleason of the Riverhead Police Department.  (Defs.' 56.1 Stmt. ¶ 29.)  On February 23, 2009, while driving a motor vehicle on the Little Flower campus, Plaintiff lost consciousness, causing the vehicle to jump a curb, drive through a fence and strike a tree.[3]  (Defs.' 56.1 Stmt. ¶ 31; N.Y. State Police Accident Rep., Defs.' Ex. M, Docket Entry 24-14.)

Following the February 23, 2009 accident, Little Flower's then-director of Human Resources, Carol Huck ("Huck"), explained to Plaintiff that due to the two accidents in less than six months where he could not recall what caused his accident, Little Flower could no longer allow the Plaintiff to continue

---

[3] While Plaintiff agrees that the February 23, 2009 New York State Police Accident Report states that he lost consciousness, Plaintiff disputes whether he lost consciousness and does not know what caused the accident.  (Pl.'s 56.1 Counterstmt. ¶ 31.)

driving on campus in consideration of the safety of the children and staff on campus. (Huck Dep. Tr., Defs.' Ex. G, Docket Entry 24-8, 45:14-25.) Huck offered Plaintiff flexibility in his work schedule as an accommodation, allowing him the ability not to be constrained by his assigned shift so long as he could arrange for transportation to and from work at different hours. (Defs.' 56.1 Stmt. ¶ 35; Huck Dep. Tr. 46:5-47:10.)

Little Flower's Executive Director, Grace Lo Grande ("Lo Grande"), informed Plaintiff that he would have to park at Bishop Cottage's parking lot, located across the street from the main Little Flower campus, and that he could no longer drive on the Little Flower campus. (Defs.' 56.1 Stmt. ¶ 32; Huck Dep. Tr., 45:14-25; Lo Grande Dep. Tr., Defs.' Ex. D, Docket Entry 24-5, 32:12-20.) In a July 12, 2009 email, Lo Grande informed Plaintiff that "[t]here is a serious risk to children and staff, should you lose control of your vehicle while driving on the main campus. Therefore, the decision to restrict driving onto the campus stands." (Defs.' 56.1 Stmt. ¶ 33; July 12, 2009 Email, Pl.'s Ex. 23, Docket Entry 25-26.) However, in August 2011, Plaintiff parked on little Flower's main campus despite the previously issued directive not to drive onto the campus due to safety concerns. (Defs.' 56.1 Stmt. ¶ 43.)

On June 22, 2009, Plaintiff had a seizure while in an agency van, just after picking up a resident from a home visit.

(Defs.' 56.1 Stmt. ¶ 37.)  Plaintiff was transported to the hospital with a co-worker and the resident remained home that evening, rather than being transported back to Little Flower as was intended. (Incident Rep., Defs.' Ex. S, Docket Entry, 24-20.) As a result, Little Flower prohibited Plaintiff from going off-campus as a passenger with the residents. (Pl.'s 56.1 Counterstmt. ¶ 37.)

On October 19, 2009, an ambulance was called to the Little Flower campus to care for Plaintiff, who staff workers believed was having a seizure.  (Defs.' 56.1 Stmt. ¶ 38.) According to the infirmary staff, Plaintiff was walking around, drooling at times, and appeared confused.  (Defs.' 56.1 Stmt. ¶ 38.)

On August 19, 2011, Plaintiff hit his head on a desk and fell to the ground while working at Little Flower.  (Defs.' 56.1 Stmt. ¶ 40.)  Plaintiff was the only child care worker present at Coretta Cottage at the time of his fall, but a resident of the cottage was also present for the fall.  (Defs.' 56.1 Stmt. ¶ 40.) A Coretta Cottage resident provided a statement that indicated that Plaintiff came to the front of the cottage to escort a resident inside when the Plaintiff began to shake and drool from the mouth and fall to the ground near the staff desk.  (Aug. 25, 2011 Resident Stmt., Defs.' Ex. U, Docket Entry 24-22.)  The unsupervised resident then ran outside of the cottage to obtain

help from another child care worker, Mike Ford, who attempted to shake the Plaintiff who appeared unconscious. (Aug. 25, 2011 Resident Stmt.)

On November 1, 2011, Plaintiff once again fell while working at Coretta's Cottage. (Defs.' 56.1 Stmt. ¶ 41.) While Plaintiff has no recollection of what he was doing prior to the fall, or how he fell, (Defs.' 56.1 Stmt. ¶ 41), Plaintiff was found face down on the floor by the Registered Nurse on duty that evening after being called by an unaccompanied resident who had reported that Plaintiff was choking. (Jan. 12, 2012 Email, Defs.' Ex. V, Docket Entry 24-23.) Plaintiff eventually sat up and had saliva on his cheek. (Jan. 12, 2012 Email.) Plaintiff was nonresponsive nor did he make eye contact when the Nurse asked how he was feeling. (Jan. 12, 2012 Email.) By letter dated November 16, 2011, Plaintiff was informed that "[his] services as a child care worker [were] no longer necessary, effective November 15, 2011." (Defs.' 56.1 Stmt. ¶ 44.)

C.  Plaintiff's Complaints

In 2009, after the revocation of his parking privileges, Plaintiff voiced his discontent to various individuals and on August 3, 2009, filed a Verified Complaint of Discrimination with the New York State Division of Human Rights ("NYSDHR") alleging disability discrimination. (Pl.'s 56.1 Counterstmt. ¶ 32.) On March 31, 2011, the NYSDHR found that there was "'no probable cause

to believe that [Little Flower] has engaged in or is engaging in the unlawful discriminatory practice complained of.'" (Defs.' 56.1 Stmt. ¶ 39; NYSDHR Order, Defs.' Ex. Q, Docket Entry 24-18.) Plaintiff never appealed the determination and on May 27, 2011, the EEOC adopted the NYSDHR's findings. (EEOC Dismissal, Defs.' Ex. R, Docket Entry 24-19.)

Plaintiff commenced this action on October 10, 2012. Defendants filed its pending motion for summary judgment on April 30, 2014. (Docket Entry 24.)

DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims. The Court will first set forth the applicable legal standards before turning to Defendants' motion more specifically.

I.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

II.  Statutes

   A.  ADA

      1.  Discrimination

      The ADA makes it unlawful for employers to discriminate

against employees on account of a disability.  It states in

relevant part:

> No covered entity shall discriminate against
> a qualified individual on the basis of
> disability in regard to job application
> procedures, the hiring, advancement, or
> discharge of employees, employee
> compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a).  A disability is defined as: (A) a physical

or mental impairment that substantially limits one or more major

life activities of such individual; (B) a record of such

impairment; or (C) being regarded as having such an impairment .

. . .  Id. at § 12102(1).  "The definition of disability [in the

ADA] shall be construed in favor of broad coverage of individuals

under [the ADA], to the maximum extent permitted by the terms of

[the ADA]."  Id. at 12102(4)(A).

      The term qualified individual [under the ADA] means:

> [A]n individual who, with or without
> reasonable accommodation, can perform the
> essential functions of the employment position
> that such individual holds or desires.  For
> the purposes of [the statute], consideration
> shall be given to the employer's judgment as
> to what functions of a job are essential, and
> if an employer has prepared a written
> description before advertising or

12

interviewing applicants for the job, this
description shall be considered evidence of
the essential functions of the job.

Id. at § 12111(8).

### 2. Failure to Accommodate

Discrimination under the ADA can occur when an employer refuses to reasonably accommodate an employee's disability. The term "discriminate against a qualified individual on the basis of disability" includes: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. at § 12112(b)(5)(A).

"Reasonable accommodation" may involve:

(A) making existing facilities used by
employees readily accessible to and usable by
individual with disabilities; and (B) job
restructuring, part-time or modified work
schedules, reassignment to a vacant position,
acquisition or modifications of equipment or
devices, appropriate adjustment or
modifications of examinations, training
materials or policies, the provision of
qualified readers or interpreters, and other
similar accommodations for individuals with
disabilities.

Id. at § 1211(9).

Employers do not need to accommodate individuals who do not have an actual disability. Id. at § 12201(h); see also Morris

13

v. Town of Islip, No. 12-CV-2984, 2014 WL 4700227, at *10 (E.D.N.Y. Sept. 22, 2014) ("the regarded as theory of disability is no longer actionable in the context of a failure to accommodate claim" (internal quotation marks and citation omitted)).

"Undue hardship" is defined as: "[A]n action requiring significant difficulty or expense . . . ."  Id. at § 12111(10)(A). The factors taken into account when determining whether a reasonable accommodation would put an undue hardship on a business include:

> (i) the nature and cost of the accommodation needed under this chapter; (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

Id. at § 12111(10)(B).

### 3. Retaliation

Retaliation against individuals pursuing their rights under the ADA is prohibited.  The ADA mandates that "[n]o person

shall discriminate against any individual because such individual
has opposed any act or practice made unlawful by this chapter or
because such individual made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or
hearing under [the ADA]." Id. at § 12203(a).

B.    New York State Human Rights Law

Under NYSHRL, it is unlawful for an employer to discharge
or discriminate against an individual because of a disability.
The statute states:

> It shall be an unlawful discriminatory
> practice . . . [f]or an employer . . . ,
> because of an individual's . . . disability,
> . . . to refuse to hire or employ or to bar or
> to discharge from employment such individual
> or discriminate against such individual in
> compensation or in terms, conditions or
> privileges of employment.

N.Y. Exec. Law. § 296(1)(a).

> Disability is defined as:

> (a) a physical, mental or medical impairment
> resulting from anatomical, physiological,
> genetic or neurological conditions which
> prevents the exercise of a normal bodily
> function or is demonstrable by medically
> accepted clinical or laboratory diagnostic
> techniques; or (b) a record of such an
> impairment; or (c) a condition regarded by
> others as such an impairment, provided,
> however, that in all provisions of this
> article dealing with employment, the term
> shall be limited to disabilities which, upon
> the provision of reasonable accommodations, do
> not prevent the complainant from performing in
> a reasonable manner the activities involved in
> the job or occupation sought or held.

Id. at § 292(21).

NYSHRL requires employers to reasonably accommodate disabled employees unless such an accommodation would impose and "undue hardship" on the business.

> It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities of an employee . . . . Nothing contained in this subdivision shall be construed to require provision of accommodations which can be demonstrated to impose an undue hardship on the operation of an employer's . . . business, program or enterprise.

Id. at § 296(3)(a)-(b).

Reasonable accommodation is defined as:

> [A]ctions taken which which permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible worksite, acquisition or modification of equipment, support services for persons for persons with impaired hearing or vision, job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business . . . from which action is requested.

Id. at § 292(21-e).

NYSHRL does not make use of the "essential functions" language present in the ADA, but "the inquiry into whether plaintiff can perform in a reasonable manner the activities in the job sought under the NYSHRL is the same as the inquiry into whether

plaintiff is qualified to perform the essential functions of the job sought under the ADA." Russo v. Sysco Food Serv. of Albany, L.L.C., 488 F. Supp. 2d 228, 238 (N.D.N.Y. 2007); see also Vinkour v. Sovereign Bank, 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010) ("[t]o establish a prima facie failure to accommodate claim under the [NYSHRL] . . . a plaintiff must demonstrate that . . . she was otherwise qualified to perform the essential functions of her job with reasonable accommodation").

"[U]ndue hardship" is defined as "significant difficulty or expense to the employer." 9 N.Y.C.R.R. § 466.11(b)(2). Factors to be taken into account when determining if a reasonable accommodation imposes an undue hardship include:

> (i) The overall size of the business . . . with respect to the number of employees, number and type of facilities, and size of budget; (ii) The type of operation which the business, program or enterprise is engaged in, including the composition and structure of the workforce; and (iii) The nature and cost of the accommodation needed.

N.Y. EXEC. LAW § 296(3)(b).

Retaliation is also prohibited under the NYSHRL, which provides that:

> It shall be an unlawful discriminatory practice . . . [f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a

17

>complaint, testified or assisted in any
>proceeding under this article.

N.Y. EXEC. LAW § 296(1)(e).

III. McDonnell Douglas Burden-Shifting Framework

Claims for disability discrimination or retaliation under the ADA and the NYSHRL[4] are all analyzed using the burden-shifting framework articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). McMillian v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013) (applying McDonnell Douglas framework and denying summary judgment where there was a material issue of fact regarding whether timeliness in the morning was an "essential function" of schizophrenic plaintiff's employment and whether reasonable accommodation was available); see also McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96-98 (2d Cir. 2009) (applying McDonnell Douglas framework and finding that employee who worked with various chemical fumes failed to show that there

_____

[4] Discrimination and retaliation claims under the NYSHRL are analyzed identically and have the same outcome as their federal counterparts. See Hyek v. Field Support Servs., Inc., 461 F. App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII." (ellipsis omitted) (internal quotation marks and citation omitted)); Kemp v. Metro-North R.R., 316 F. App'x 25, 26 (2d Cir. 2009) ("We analyze claims under the NYSHRL using the same standards that apply to federal civil rights statutes such as Title VII . . . and the ADA." (citations omitted)). Thus, the Court will provide singular discussions for Plaintiff's NYSHRL claims and their federal counterparts.

was a reasonable accommodation of her respiratory ailment that employer could have pursued beyond its offer to provide her with a respirator that would deliver breathable air during working hours, which she rejected).

The Second Circuit has described the <u>McDonnell Douglas</u> framework as follows:

> Under <u>McDonnell Douglas</u>, plaintiff bears the initial burden of proving by a preponderance of the evidence of a prima facie case of discrimination . . . . The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.

<u>Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty.</u> <u>Adolescent Prog., Inc.</u>, 198 F.3d 68, 72 (2d Cir. 1999) (internal quotation marks and citations omitted). In essence, (1) "[a] plaintiff must establish a prima facie case;" (2) "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge;" and (3) "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." <u>McBride</u>, 583

F.3d at 96 (internal quotation marks and citation omitted). "In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." McMillan, 711 F.3d at 126 (internal quotation marks and citation omitted; alterations in original). With this framework in mind, the Court turns to Defendants' grounds for summary judgment on each of Plaintiff's claims.

IV. Little Flower's Motion

Defendants move for summary judgment on each of Plaintiff's claims, arguing that Plaintiff can neither establish his prima facie case nor prove that Little Flower's stated reason for terminating his employment was a pretext for unlawful discrimination or retaliation under the standards governing claims brought pursuant to the ADA and the NYSHRL. As discussed below, the Court finds that summary judgment is appropriate on all claims asserted.

A.  Disability Discrimination

As previously noted, to survive summary judgment, Plaintiff first must establish a prima facie case of discrimination. To do so, Plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability

within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. See Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004) (citing Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003)); Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

With respect to the third element, "it is generally the responsibility of the individual with a disability to inform the employer that an accommodation is needed." McElwee v. Cty. of Orange, 700 F.3d 635, 641-42 (2d Cir. 2012) (internal quotation marks and citation omitted). "Once the plaintiff has demonstrated that there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is not reasonable." Id. at 642 (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995)). Only then does the burden shift to the defendant to prove that "the requested accommodation is not reasonable." Id.

The first two elements of Plaintiff's prima facie case are not in dispute. Little Flower is covered by the ADA and on notice of Craddock's disability. The pertinent inquiry before the Court as to Plaintiff's prima facie case is whether he can

establish that he was qualified to perform the essential functions of his job, with or without a reasonable accommodation, or that the circumstances surrounding his termination give rise to an inference of discriminatory animus. (Defs.' Br., Docket Entry 24-29, at 15.)

Little Flower argues that due to the "mental, emotional and developmental disabilities that the children of Little Flower have, constant supervision and awareness of their activities is an essential function of the child care worker position there." (Defs.' Br. at 15.) Plaintiff contends that "constant" supervision is not necessary by each individual child care-worker because New York State law mandates a one child care-worker to nine or fewer children ratio for authorized agencies such as Little Flower. (18 N.Y.C.R.R. § 442.18(d)(2)(i); Pl.'s Br., Docket Entry 25-3, at 9.) Plaintiff also acknowledges that he was always assigned to work with another child care worker when on duty in the various cottages. (Pl.'s Br. at 9.)

In order to prevail on a claim of disability discrimination, an actually or regarded as disabled Plaintiff must demonstrate that they were otherwise capable of performing the job. A "[p]laintiff is not otherwise qualified unless he is able, with or without reasonable accommodation, to perform the essential functions of the job in question." Stamey v. NYP Holdings, Inc., 358 F. Supp. 2d 317, 323 (S.D.N.Y. 2005); see also 42 U.S.C.

§ 12111(8). "'Essential functions' are duties that are 'fundamental' to the job in question." Vandenbroek v. PSEG Power, CT LLC, 356 F. App'x 457, 459 (2d Cir. 2009) (summary order) (citing Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997)). "In determining which duties are fundamental, [courts] accord 'considerable deference to an employer's judgment.'" Id. (quoting D'Amico v. City of N.Y., 132 F.3d 145, 151 (2d Cir. 1998)). Generally speaking, however, a plaintiff can discharge their burden by demonstrating that they possess the "'basic skills necessary for the performance of [the] job.'" Mattera v. JP Morgan Chase Corp., 740 F. Supp. 2d 561, 572 (S.D.N.Y. 2010) (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001)) (alteration in original).

Inextricably intertwined with a plaintiff's burden on this element is an employer's potential defense that, because of the employee's actual or perceived disability, he or she constitutes a "direct threat" to themselves or others and is thereby unqualified for the position. 42 U.S.C. § 12113(b); N.Y. COMP. CODES R. & REGS. tit. 9, § 466.11(g)(2). A "direct threat" is defined as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). In order to be a significant risk, "the probability of significant harm must be substantial, constituting more than a remote or slightly increased risk." Hatzakos v. Acme Am.

Refrigeration, Inc., No. 03-CV-5428, 2007 WL 2020182, at *9 (E.D.N.Y. July 6, 2007); see also 29 C.F.R. pt. 1630, app. § 1630.2(r); Hamlin v. Charter Twp. Of Flint, 165 F. 3d 426, 432 (6th Cir. 1999) ("An employer ... is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. The risk can only be considered when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient."). An employer can avail itself of this defense if it conducts "'an individualized assessment of the employee's present ability to safely perform the essential functions of the job . . . based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.'" Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 170 (2d Cir. 2006); quoting 29 C.F.R. § 1630.2(r); see also N.Y. COMP. CODES R. & REGS. tit 9, § 466.11(g)(2)(ii). An individualized assessment involves a consideration of: "(1) [t]he duration of the risk; (2) [t]he nature and severity of the potential harm; (3) [t]he likelihood that the potential harm will occur; and (4) [t]he imminence of the potential harm." Hatzakos, 2007 WL 2020182, at *9.

In light of the nexus between the essential functions element and the direct threat defense, many courts singularly analyze the issue. See Nelson v. City of N.Y., No. 11-CV-2732, 2013 WL 4437224, at *9 (S.D.N.Y. Aug. 19, 2013) (collecting cases).

"Whether an individual creates a direct threat to the health or safety of others must depend on an individualized assessment of the individual's present ability to safely perform the essential functions of his job." Shepheard v. City of N.Y., 577 F. Supp. 2d 669, 676 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  The Shepheard court held that a correction officer was not qualified to perform the essential functions of her job due to the physical manifestations of her depression which prevented her from being able to quickly respond to emergencies involving inmates and, accordingly, threatened the safety of other inmates and fellow officers.  Id. at 677.  As in Shepheard, the manifestation of Plaintiff's disability renders him unable to ensure the safety of the children under his care.

During Plaintiff's tenure with Little Flower, there were eight separate incidents of unconsciousness where Plaintiff was rendered incapable of providing constant supervision over the children in his care.  (Defs.' Br. at 16.)  Two of Plaintiff's eight incidents occurred while Plaintiff was operating a vehicle while on the Little Flower campus and in both incidents, Plaintiff could not recall the cause of the accident, nor the accident itself.  (Craddock Dep. Tr., 66:25-67:3, 69:4-14.)  Notably, Plaintiff's last two incidents prior to his termination left residents unsupervised while in Plaintiff's care.  (Aug. 25, 2011 Resident Stmt.; Jan. 12, 2012 Email.)  Plaintiff has acknowledged

that when the incidents occur he "blacks out" and has no recollection of the events before or after the seizure. (Craddock Dep. Tr., 55:2-12.) It is not within Little Flower's ability to create an environment that ensures Plaintiff is always surrounded by other aides to care for the children should he have a seizure. While Plaintiff is correct that the cottages are equipped with surveillance cameras, they are not continually monitored (Hale Dep. Tr., Defs.' Ex. C, Docket Entry 24-4, 24:2-12.) Further, there are times that Plaintiff may be left alone with residents while fellow child care workers are busy attending to other residents. The record indicates that Plaintiff's ability to perform the essential functions of his job as a child care worker at Little Flower, such as constant supervision and assurance of the well-being of the residents within his care, was impaired by his seizures and the blackouts they caused, thus threatening the safety of the residents within Plaintiff's care. Accordingly, Plaintiff was not qualified to perform the essential functions of his job, with or without accommodation.

B.  Reasonable Accommodations

The Plaintiff asserts a claim for failure to reasonably accommodate him, which is based on two distinct premises: (i) Little Flower failed to accommodate him with modifications to his child-care duties and/or "identify an alternate position" (Pl.'s Br. at 12); and (ii) Little Flower also failed to engage

him in an interactive process in order to assess his needs and determine the appropriateness of a reasonable accommodation. Little Flower contends that summary judgment is appropriate with respect to both aspects of his claims.

An employer may be liable under the ADA if it "'fails to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.'" _Morris v. Town of Islip_, No. 12-CV-2984, 2014 WL 4700227, at *12, (E.D.N.Y. Sept. 22, 2014) (quoting _Cody v. Cty. of Nassau_, 577 F. Supp. 2d 623 (E.D.N.Y. 2008), _aff'd_, 345 F. App'x 717 (2d Cir. 2009)); _see_ 42 U.S.C. § 12112(b)(a). In this regard, Plaintiff's _prima facie_ burden requires him to establish "'that (1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with [or without] reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" _Scalera v. Electrograph Sys., Inc._, 848 F. Supp. 2d 352, 360 (E.D.N.Y. 2012) (quoting _Graves v. Finch Pruyn & Co._, 457 F.3d 181, 184 (2d Cir. 2006)).

The burden-shifting framework set forth in _McDonnell Douglas_, outlined above, applies to claims based on failure to accommodate. _See id._ Accordingly, after the plaintiff makes a _prima facie_ showing of a failure to accommodate, the burden

27

shifts to the defendants to demonstrate that the plaintiff's proposed accommodation would result in an undue hardship. See Diaz v. Local 338, No. 13-CV-7187, 2015 U.S. Dist. LEXIS 86777, at *72 (E.D.N.Y. May 15, 2015), Report and Recommendation adopted, 2015 WL 5158511 (E.D.N.Y. July 2, 2015) (internal quotation marks and citation omitted); see also Scalera, 848 F. Supp. 2d at 360 (holding, in an ADA case, that "once Plaintiff puts forth a prima facie case, the burden shifts to the employer to demonstrate that the employee's proposed accommodation would result in an undue hardship") (citing Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997); E.E.O.C. v. Yellow Freight Sys. Inc., No. 98-CV-2270, 2002 WL 31011859, at *11, (S.D.N.Y. Sept. 9, 2002)); cf. United States v. N.Y. City Tr. Auth., No. 04-CV-4237, 2010 WL 3855191, at *16, (E.D.N.Y. Sept. 28, 2010) (holding, in an analogous context, that "[o]nce a prima facie case [based on failure to reasonably accommodate] is established, the burden shifts to the employer to show that it could not reasonably accommodate plaintiff without undue hardship") (citing Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985), aff'd & remanded on other grounds, 479 U.S. 60, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986)). A claim based on a failure to make reasonable accommodations does not require the plaintiff to show a discriminatory animus. See Scalera, 848 F. Supp. 2d at 362. Rather, it is sufficient to establish that a covered entity failed

to fulfill its affirmative duty to make a reasonable accommodation for the known physical or mental limitations of a disabled employee.  See id.

      "'On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits.'"  Feeley v. N.Y. City Police Dep't, No. 97-CV-2891, 2001 WL 34835239, at *9 (E.D.N.Y. Sept. 4, 2001) (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 139 (2d Cir. 1995)); see Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 567 (2d Cir. 2000) (noting that the plaintiff's burden is not a heavy one and "[i]t is enough . . . to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits" (quoting Borkowski, 63 F.3d at 138)). Relevant here, while the statute contemplates that "[a] reasonable accommodation may include reassignment to a vacant position," Thompson v. N.Y. City Dep't of Prob., 348 F. App'x 643, 645 (2d Cir. 2009) (citing 42 U.S.C. § 12111(9)), "the employer need not find or create a position for the employee," id. (citing Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995.  In fact, "[a]n ADA plaintiff seeking accommodation in the form of a transfer bears the burden of proving that a vacancy existed into which he or she might have been transferred."  Id. (citing Jackan, 205 F.3d at 566).

The Second Circuit has condensed the relevant legal principles into a two—step test: "First, 'the plaintiff bears the burden of proving . . . that an accommodation exists that permits her to perform the job's essential functions.' If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant." Jackan, 205 F.3d at 566 (citations omitted).

It is well-settled that "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Id. (citation omitted); 29 C.F.R. § 1630.2(o)(3). "To satisfy its ADA obligations in this regard, an 'employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of those alternative positions, with or without reasonable accommodation.'" Felix v. N.Y. City Tr. Auth., 154 F. Supp. 2d 640 (S.D.N.Y. 2001), aff'd, 324 F.3d 102 (2d Cir. 2003) (quoting Dalton v. Subaru—Isuzu Auto., Inc., 141 F.3d 667, 668 (7th Cir. 1998)).

However, it is critical to note that the failure to engage in an interactive process does not, itself, "form the basis

of an ADA claim in the absence of evidence that accommodation was possible." McBride, 583 F.3d at 100. As a result, evidence of an employer's failure to engage in an interactive process "does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." Id.

"An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." Nugent v. St. Lukes–Roosevelt Hosp. Ctr., 303 F. App'x 943, 946 (2d Cir. 2008). In evaluating a claim for failure to accommodate, therefore, "courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135–36 (7th Cir. 1996) ("[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.").

Plaintiff's contention that Little Flower failed to reasonably accommodate him is without merit. Plaintiff bears the burden of identifying an accommodation. To that end, he asserts that he should have either (a) been assured that he was never alone with residents or (b) been "afforded an opportunity to identify an alternate position" for which he could "perform the essential functions of." (Pl.'s Br. at 12.)

As to the first of Plaintiff's proposed accommodations, Plaintiff has failed to present any evidence suggesting that Little Flower could ensure that Plaintiff would never be left alone with residents. In fact, Little Flower reasonably accommodated Plaintiff by relieving his requirement of driving residents, a requirement that all other childcare workers had. (Huck Dep. Tr. 30:9-10.) Little Flower further accommodated Plaintiff by providing flexibility in his work schedule (Huck Dep. Tr. 46:5-16), and for a short time also provided Plaintiff with a place to park immediately adjacent to the main campus. (Lo Grande Dep. Tr. 32:12-20.) There is simply no accommodation that would ensure that residents are never left unsupervised with Plaintiff without creating an undue burden on Little Flower, or eliminating the essential function of Plaintiff's child-care job, which is to supervise and ensure the safety of the residents.

Similarly, Plaintiff's suggestion that Little Flower was never afforded an opportunity to identify an alternate position for which he could perform the essential functions of is insufficient to defeat summary judgment. As in Jackan, Plaintiff has failed to present evidence that there were any vacant positions at Little Flower that he could have been transferred to. Additionally, during the arbitration proceeding that preceded the instant case, Little Flower proposed reassigning Plaintiff to a maintenance position, which Plaintiff rejected and made clear that

he was not qualified for it, and was only qualified to perform childcare. (Lo Grande Dep. Tr. 57:2-12.)

Plaintiff's allegations that Little Flower failed to engage him in an interactive process are also without merit. The record makes clear that Plaintiff at no time requested an accommodation and refused to acknowledge that he required an accommodation. However, the law in the Second Circuit recognizes that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious--which is to say, if the employer knew or reasonably should have known that the employee was disabled," whether or not the employee has requested an accommodation or even acknowledges that she has a disability. Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008). Here, although Plaintiff never requested an accommodation, once Little Flower became aware of Plaintiff's disability, it provided him with accommodations by removing his driving responsibilities and granting him a flexible work schedule. (Huck Dep. Tr. 29:5-30:10, 46:13-16.) Little Flower clearly initiated the interactive process although Plaintiff consistently maintained that the eight incidents had nothing to do with his disability and never participated in the interactive process with Little Flower to help determine further possible accommodations.

In sum, Plaintiff does not offer any evidence to create a genuine issue of material fact that Little Flower terminated his employment because of a disability. Thus, Plaintiff has failed to establish an inference of discrimination, and Little Flower's motion for summary judgment on Plaintiff's disability discrimination claims under the ADA and the NYSHRL are therefore GRANTED.

### C. Retaliation Under the ADA and NYSHRL

Title V of the ADA prohibits discrimination in the form of retaliation against any individual who "has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). Claims of retaliation are analyzed under the McDonnell Douglas framework, discussed above. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). In order to state a prima facie case of retaliation, "plaintiff must establish that (1) [he] was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000). "Protected activity" includes "oppos[ing] any act or practice made unlawful by this chapter," as well as "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding or hearing under this

chapter." 42 U.S.C. § 12203(a). Once a plaintiff makes a prima
facie case, the burden shifts to the defendant to show legitimate,
nondiscriminatory business reasons for the employment action. See
Sista, 445 F.3d at 169. Thereafter, Plaintiff may again show that
the reasons provided are pretextual. See id.

Assuming the first three prongs on the prima facie case
are met, Little Flower argues, with respect to the final prong,
that Plaintiff's claim lacks a temporal proximity between the
protected activity and the alleged retaliation. (Defs.' Br. at
23.) As set forth below, Plaintiff alleges that Little Flower
terminated his employment in 2011, in retaliation for complaints
made in 2009 that culminated in the filing of an EEOC complaint in
August 2009. At his deposition, Plaintiff testified as follows:

> Q: Other than the fact that you filed an EEOC
> Claim in 2009, do you have any factual
> knowledge that would indicate to you that your
> firing was retaliatory?
>
> A: No.
>
> Q: You have no personal knowledge that your
> termination was retaliatory other than the
> fact that you filed your 2009 EEOC complaint?
>
> A: That's correct.

(Craddock Dep. Tr. 92:7-16; Pl.'s Br. at 23-24.) Defendants
contend that Plaintiff was terminated for a legitimate business
reason--namely his failure to provide constant supervision of the
children under his care. (Defs.' Br. at 23.)

Plaintiff's retaliation claim fails because "the mere filing of such a complaint does not insulate an employee from subsequent discipline or discharge by his employer, nor create an automatic presumption that any subsequent employer action adverse to the employee is retaliatory in nature." Spencer v. The Perrier Group of Am., No. 95-CV-8404, 1997 WL 282258, at *1 (S.D.N.Y. May 28, 1997). The Plaintiff must demonstrate a "nexus between a specific grievance and a specific adverse action" in order to find that proximity established causality. Edwards v. Horn, No. 10-CV-6194, 2012 WL 760172, at *17 (S.D.N.Y. Mar. 8, 2012); see also Andino v. Fischer, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (finding that the temporal proximity between the complaints was a result of the "large number of grievances in a short period of time"). Further, courts in this Circuit have found that "when more than three months have passed between a protected activity and an allegedly retaliatory response, the Second Circuit has deemed the evidence insufficient to raise an issue of fact concerning causation." Jimenez v. City of N.Y., 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009); see also Hollander v. Am. Cvanamid Co., 895 F.2d 80, 86 (2d Cir. 1990) (finding period of three months insufficient to establish temporal proximity); Miller v. Norton, No. 04-CV-3223, 2008 WL 905830, *7 (E.D.N.Y. Mar. 31, 2008) (finding no temporal proximity where more than one year elapsed between filing of complaint and failure to promote); Fitch v. R.J.

Reynolds Tobacco Co., 675 F. Supp. 133, 138 (S.D.N.Y. 1987) (finding period of seven months insufficient).

Here, Plaintiff's termination occurred on November 18, 2011, over two years after the filing of his EEOC complaint charging Little Flower with discriminating against him because of his disability. This two-year time period falls substantially outside the established general time-frame used when determining temporal proximity. Accordingly, Plaintiff has failed to adduce any evidence to support his claim of retaliation and Defendants' motion for summary judgment on Plaintiff's retaliation claims under the ADA and the NYSHRL are therefore GRANTED.

D.   There is no Individual Liability for ADA Discrimination or Retaliation Claims

Plaintiff alleges that Little Flower's Executive Assistant Director, Hale, aided, abetted, incited, compelled, and/or coerced the alleged unlawful conduct in violation of the ADA. (Compl., ¶¶ 32, 46.)

"Because an individual is not an 'employer' under Title VII, an individual is also not an 'employer' under the ADA and, therefore, may not be liable for disability discrimination." Ivanov v. N.Y. City Transit Auth., No. 13-CV-4280, 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014); Corr v. MTA Long Island Bus, 27 F. Supp. 2d 359, 370 (E.D.N.Y. 1998) ("In light of Tomka, and the overwhelming authority in the Second Circuit construing Tomka as

37

prohibiting individual liability under the ADA, Plaintiff's ADA claim against [individual defendants] must be . . . dismissed."), aff'd, 199 F.3d 1321 at *2 (2d Cir. 1999) ("We also agree with the district court that . . . there is no right of recovery against individual defendants under the ADA." (citing Tomka, 66 F.3d at 1314)).

Similarly, an individual may not be liable under the retaliation provision of the ADA. Because the remedial provisions of Title VII do not provide for individual liability, "it follows that, in context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in [Title VII], cannot provide for individual liability." Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010).

Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's ADA discrimination and retaliation claims against Monroe Hale is GRANTED.

E.   Plaintiff's NYSHRL Claims Against Defendant Hale

Plaintiff seeks to hold Executive Assistant Director Hale individually liable for discrimination and retaliation against him under the NYSHRL. (Compl. ¶¶ 39, 53.)

Unlike the ADA, the NYSHRL provides for the imposition of liability on individual defendants under two of its provisions: §§ 296(1) and 292(6), "Individual liability under § 296(1) lies only where a defendant actually participates in the conduct giving

rise to discrimination, and is limited to individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees." Hubbard v. No Parking Today, Inc., No. 08-CV-7228, 2010 WL 3835034, at *10 (S.D.N.Y. Sept. 22, 2010) (internal quotation marks and citation omitted). Section 296(6) of the NYSHRL provides for "aiding and abetting" § 296(1)(a) violations, explaining that "' [i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.'" Id. (quoting N.Y. EXEC. LAW § 296(6)). To be found liable under § 296(6), an individual need not have supervisory or hiring and firing power, but still must have "actually participated in the conduct giving rise to the claim of discrimination." Id. (internal quotation marks and citation omitted).

        "However, liability under the [NYS]HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor." Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999). Since the NYSHRL claims of discrimination and retaliation are not viable against Plaintiff's employer, they are not viable against the individual defendant.

        For the reasons discussed above, Plaintiff has failed to establish any actionable employer discrimination. There is simply

no employer liability in this case that the individual defendant Hale could have participated in or aided and abetted. Therefore, Defendant Hale is also entitled to summary judgment on Plaintiff's NYSHRL claims.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February __25__, 2016
           Central Islip, New York